**UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
JACKSONVILLE DIVISION**

KIMBERLY HOWARD,

    Plaintiff,

vs.                                                  CASE NO. 3:10-cv-192-J-34TEM

HARTFORD LIFE AND ACCIDENT
INSURANCE COMPANY,

    Defendant.
_____/

## O R D E R

The matter is before the Court on: (1) Defendant's motion for protective order with respect to deposition topics (Doc. #57) and the response in opposition thereto (Doc. #62-1); (2) Defendant's motion for protective order regarding alleged overly burdensome, or excessive, discovery requests (Doc. #63) and the response in opposition (Doc. #80); and (3) Plaintiff's motion to compel outstanding discovery (Doc. #78) and the response in opposition (Doc. #87).

A hearing on the motions for protective orders (Docs. #57 and #63) was held before the undersigned on May 20, 2011 (Doc. #83, Minutes).[1] For the reasons stated herein, Defendant's motions for protective orders (Docs. #57 and #63) are granted in part and denied in part, and Plaintiff's motion to compel outstanding discovery (Doc. #78) is granted in part and denied in part.

---

[1] By way of a separate motion (Doc. #79), Plaintiff requests a hearing on the motion to compel and a shortened response period. As the undersigned finds neither request would assist him in making his determinations, the motion shall be denied.

## I. APPLICABLE LEGAL STANDARD

This is an Employee Retirement Income Security Act of 1974 ("ERISA"), 29 U.S.C. § 1001 *et seq.*, benefits action brought by Plaintiff to obtain judicial reversal of Defendant's decision (as a claim administrator of an employee welfare benefit plan) to discontinue payment of Plaintiff's long-term disability ("LTD") benefits.

When reviewing a plan administrator's decision in the ERISA context, the District Court has significant discretion to allow or disallow discovery requests. Rule 26 provides that "unless otherwise limited by court order," parties to a civil action may conduct discovery regarding any matter that is not privileged and relevant to a claim or defense in the cause. Fed.R.Civ.P. 26(b)(1). The standard of review in an ERISA case dictates what facts or evidence must be proven to succeed on a claim for benefits under the terms of the plan; thus, the standard of review necessarily defines the scope of discovery. *See Featherston v. Met. Life Ins. Co.*, 223 F.R.D. 647, 651 (N.D. Fla. 2004).

In response to the Supreme Court's decision in *Met. Life Ins. Co. v. Glenn*, 554 U.S. 105 (2008), the Eleventh Circuit now considers a plan administrator's conflict of interest, which arises when the administrator both determines eligibility under the plan and pays the claim from its own general assets, as a factor when determining whether an administrator's decision was arbitrary and capricious. *Doyle v. Liberty Life Assur. Co. of Boston*, 542 F.3d 1352, 1359-60 (11th Cir. 2008) (*citing Glenn*, 554 U.S. at 105). When, as here, there is an admitted conflict of interest, an individualized inquiry into the conflict of interest is necessary because conflicts "will themselves vary in kind and in degree of seriousness." *Glenn* 554 U.S. at 105; *see also Doyle*, 542 F.3d at 1360; *Capone v. Aetna Life Ins. Co.*, 592 F.2d 1189, 1195 (11th Cir. 2010).

The *Glenn* decision clearly indicates that the Court must consider and weigh the varying circumstances which bear on the existence and extent of the conflict of interest in this case. Discovery is therefore necessary to reveal those facts. Plaintiff seeks to acquire documents and to take depositions for the purpose of, *inter alia*, exposing the extent of any conflict of interest, establishing whether any unwritten procedures or facts were considered, and establishing whether the overall review of the claim was compatible with Defendant's fiduciary duty in interpreting the plan. These matters are reasonably related to the conflict of interest issue.

Indeed, by Order dated February 14, 2011, this Court permitted discovery limited to determining the nature and extent of Defendant's conflict of interest and whether Defendant was influenced by its own self-interest, stating: "[o]nce Plaintiff reviews the administrative record and determines whether additional information is required, Plaintiff may tailor specific requests for appropriate discovery without duplicating what has already been produced" (Doc. #36 at 4). Pursuant to the aforementioned Court Order (Doc. #36), Plaintiff propounded the subject discovery requests and issued the subject subpoenas. Defendant has objected to many of Plaintiff's requests as being, *inter alia*, overly broad in the context of an ERISA action.

## II. ANALYSIS

**A.     Plaintiff's Motion to Compel Outstanding Discovery (Doc. #78)**

In the Motion to Compel, Plaintiff seeks responses to a multitude of discovery requests. More particularly, Plaintiff moves the Court to compel responses to eight broad topical areas: (i) internal rules, guidelines, procedures, and practices; (ii) claims processing

and rates of approval and denials; (iii) employee information; (iv) third-party reviewer information; (v) organizational structure; (vi) costs, calculations, and reserves; (vii) computer program information; and (viii) Social Security Administration information (Doc. #78 at 1-35).[2]

### 1. Internal Rules, Guidelines, Procedures, and Practices

Plaintiff's request for production No. 3 seeks all documents that "evidence or relate to" no fewer than 33 broad sub-topical areas if inquiry (from January 1, 2005 through the present) (*see* Doc. #78 at 6-7). The undersigned finds this request to be overly broad on its face. Defendant maintains that any attempt to respond to the request would require guesswork to the point of being abusive (Doc. #87). *See Cardenas v. Dorel Juvenile Group, Inc.*, 230 F.R.D. 611, 623 (D. Kan. 2005). The undersigned agrees. Accordingly, Defendant's objections to Plaintiff's request for production No. 3 are sustained.[3]

Plaintiff's requests for production Nos. 25-27 and interrogatory request No. 9 essentially seek Defendant's internal rules, manuals, guidelines, procedures, and protocols with respect to Defendant's processing, investigation, and/or determination of disability claims (*see* Doc. #78 at 8-9). While Plaintiff's specific requests, *supra*, contain ambiguous language and undefined terms, the undersigned finds that the underlying documents that would be responsive to the requests are relevant, and that such documents could reasonably lead to admissible evidence. Therefore, Defendant will be required to respond

---

[2] Plaintiff also requests that the Court require Defendant to produce certain proprietary business information without a protective/confidentiality order (Doc. #78 at 2-6). This request has been rendered moot by an Order, dated June 22, 2011, granting in part Defendant's motion for entry of a protective/confidentiality order (Doc. #107, Order), which is hereby incorporated by reference.

[3] The undersigned would note that much of what Plaintiff seeks by way of Request No. 3 will likely be obtained by Plaintiff pursuant to other rulings made in this Order, *infra*.

to said discovery requests to the extent that Defendant shall provide Plaintiff with a copy of all internal rules, manuals, guidelines, procedures, and protocols regarding Defendant's processing, investigation, and/or determination of its disability claims from January 1, 2005 through January 1, 2008.[4]

Interrogatory request No. 12 requires Defendant to identify "each and every attempt made by the Defendant to contact any of Plaintiff's treating physicians" (Doc. #78 at 10). Requests for production Nos. 11-14 seek documents regarding any and all communications between Defendant and individuals or entities related to Plaintiff's claim (*see* Doc. #78 at 10-11). As noted above, by Order dated February 14, 2011, this Court permitted discovery limited to determining the nature and extent of Defendant's conflict of interest and whether Defendant was influenced by its own self-interest, stating: "[o]nce Plaintiff reviews the administrative record and determines whether additional information is required, Plaintiff may tailor specific requests for appropriate discovery without duplicating what has already been produced" (Doc. #36 at 4). Defendant maintains that "any and all documents responsive to these requests are contained within the administrative record and thus have been produced" (Doc. #87 at 14-15). As such, the undersigned finds the responsive documents need not be produced a second time.

Request for production No. 17 seeks: "All medical guidelines, or other informative medical material in any format, scientific, vocational, and/or occupational treatises, manuals, articles, operational guidelines, policies, procedures, interpretations, memoranda,

---

[4] To the extent documents responsive to this request are encompassed by the Court's previously entered Protective Order (Doc. #107-1), they shall be produced pursuant to the same. In addition, it should be noted that Plaintiff alleges she became disabled on or about April 29, 2005 (Doc. #1 at 3), and that Defendant issued a final benefits termination decision in June 2007 (Doc. #87 at 17).

and documents reviewed and/or relied upon by the Defendant in any of the claim determinations made in [Plaintiff's] claim for disability benefits. . . ." (Doc. #78 at 11). To the extent this information is not contained within the administrative record, the request potentially seeks production of entire libraries of information and is, therefore, overly broad. Consequently, Defendant's objections are sustained.

### 2. Administrative Procedures, Safeguards, Claims Processing, and Rates of Approval and Denials

Requests for production Nos. 4, 6, 7, and interrogatory request No. 7, essentially seek documents regarding Defendant's administrative procedures, safeguards, and management checks to help minimize the inherent conflict of interest between Defendant's fiduciary obligations under ERISA and its profitability concerns as a business (Doc. #78 at 12-14). Such requests appear to relate to establishing whether the overall review of the claim was compatible with Defendant's fiduciary duty in interpreting the plan. These matters are reasonably related to the conflict of interest issue contemplated by *Glenn*, 554 U.S. 105, and shall be produced. However, to the extent these requests require Defendant to produce "all documents concerning" Defendant's implementation of the requirements of 29 C.F.R. § 2560.503-1(b), the undersigned finds such requests to be overly broad and unduly burdensome to produce. Consequently, Defendant shall be required to produce only documents that reflect Defendant's disability claims procedures, if any, that "contain administrative processes and safeguards designed to ensure and to verify that benefit claim determinations are made in accordance with governing plan documents and that, where appropriate, the plan provisions have been applied consistently with respect to similarly

situated claimants." 29 C.F.R. § 2560.503-1(b)(5).[5] As the statutory language, *supra*, refers to "safeguards," Defendant's objection that this term is "undefined and unclear in meaning" is overruled (*see* Doc. #78 at 13).

Plaintiff's request for production No. 8 seeks management reports from 2005 through 2007 that evidence Defendant's:

> (a) liability acceptance rates by Defendant for the Plan which is the subject of this lawsuit; (b) approval rates, including the length of the approval, by Defendant for the Plan which is the subject of this lawsuit; (c) denial rates (*i.e.*, claims that were denied outright) by Defendant for the Plan which is the subject of this lawsuit; and (d) termination rates (*i.e.*, claims that were approved but then terminated) by Defendant for the Plan which is the subject of this lawsuit.

(Doc. #78 at 14).

Interrogatory request No. 3 seeks the percentage of times any and all individuals involved with Plaintiff's claim approved, denied, or terminated other claimants' claims throughout said individuals' employment or involvement with Defendant (Doc. #78 at 18). Interrogatory request No. 14 seeks the percentage of opinions given by third-party medical reviewers (from 2003 through 2007) that "supported" various conclusions with respect to Plaintiff, and requires Defendant to "list all of the different types of injuries and/or illnesses suffered by **insureds and/or claimants** for which each such professional performed one or more examinations, reviews or studies in each of 2003 through and including 2007" (Doc. #78 at 24) (*emphasis added*).

The undersigned finds most of this requested information is not reasonably calculated to lead to admissible evidence for the reasons that follow.

---

[5] To the extent documents responsive to this request are encompassed by the Court's previously entered Protective Order (Doc. #107-1), they shall be produced pursuant to the same.

While the Court acknowledges that in a prior Order, dated February 14, 2011, it quoted a Northern District of Alabama case which noted statistical records reflecting the percentages of claims granted and denied could be helpful to a court charged with the great responsibility imposed upon it by *Glenn* to weigh the conflict of interest, the issue before the Court, at that time, concerned only whether limited discovery into Defendant's inherent conflict of interest should be allowed. *See Howard v. Hartford Life & Acc. Ins. Co.*, No. 3:10-cv-192-J-34TEM, 2011 WL 522857 (M.D. Fla. Feb. 14, 2011) (*citing Blankenship v. Metropolitan Life Ins. Co.*, 686 F. Supp.2d 1227, 1233 (N.D. Ala. Dec. 30, 2009)). The Court, however, is not bound by the cases that may have found such statistical data reflecting the percentages of claims granted and denied could be helpful to a court weighing the conflict of interest as a factor in determining the ultimate adequacy of the agency's factual conclusion(s).

When analyzing what impact, if any, this type of statistical data would have on weighing Defendant's conflict of interest, the undersigned finds the figures are based on such a broad variety of factors as to render any conclusion(s) drawn therefrom to be meaningless. Specifically, such figures would not take into account the individualized circumstances of each case. *See Grams v. American Med. Instruments Holdings Long Term Disability Plan*, No. 3:08-cv-1060-J-12MCR, 2009 WL 2926844, at *4 (M.D. Fla. Sept. 14, 2009); *see also Dilley v. Met. Life Ins. Co.,* 256 F.R.D. 643 (N.D. Cal. 2009) (finding the number of claims denied by the administrator when the administrator utilized a particular medical consulting firm were "meaningless" unless a finding could be made that the administrator had wrongly denied such claims).

With respect to interrogatory request No. 14, however, Plaintiff is entitled to receive a copy of any third-party medical opinion that concerned Plaintiff. The demand that Defendant "list all of the different types of injuries and/or illnesses suffered by insureds and/or claimants for which each such [third-party] professional performed one or more examinations, reviews or studies in each of 2003 through 2007" is patently overly broad. Defendant's objection with respect to this portion of the request is sustained.

### 3. Employee Information

By way of request for production No. 16 and interrogatory requests Nos. 4 and 5, Plaintiff seeks a plethora of employee related information (Doc. #78 at 16-20). While the undersigned finds information related to compensation, bonuses, awards, and any stock options is reasonably calculated to lead to admissible evidence, private information regarding personnel performance evaluations is not directly relevant to the instant litigation. *Grams*, 2009 WL 2926844, at *3; *see also Rinehart v. Life Ins. Co. of North America*, No. C08-05486-RBL, WL 2009 2240286 at *2 (W.D. Wash. July 27, 2009) (finding private personal information such as tax returns, income statements, performance evaluations, and disciplinary records are not relevant to the plan provider's conduct).

Therefore, for the period from January 1, 2005 through January 1, 2008, Defendant shall produce any written bonus program, profit-sharing program, stock option program, or any other performance recognition program concerning any of Defendant's employees that were involved or associated with the determination of Plaintiff's claim. In addition, Defendant shall produce this information with respect to the supervisors of such individuals. Defendant shall also produce documents related to any **specialized** training, education,

or experience of Defendant's employees that were involved or associated with the determination of Plaintiff's claim.

### 4. Third-Party Reviewer Information

Plaintiff's request for production No. 19 seeks copies of any and all promotional materials received by Defendant from any third-party involved or associated with Plaintiff's claim (Doc. 78 at 21). In the motion, Plaintiff agrees to limit the request to "materials received up to 2007" (Doc. #78 at 22). The undersigned finds such materials could possibly lead to the discovery of admissible evidence regarding how such third-parties marketed their services to Defendant and what assurances, if any, such third-parties gave with respect to their services. For instance, a third-party's emphasis on claim denials, guarantees of procuring information to support claim denials, or a focus on increased profits could shed light on the extent of Defendant's conflict of interest. Consequently, to the extent Defendant has such materials in its possession, it shall provide them to Plaintiff. The request is limited to materials received by Defendant from January 1, 2005 through January 1, 2008.

Request for production No. 22 seeks evidence related to the total amount(s) Defendant paid to third-parties that were involved or associated with Plaintiff's claim (Doc. #78 at 22). In *Grams*, the Court found such information to be irrelevant in an ERISA action because "costs associated with medical [or other] professionals can vary for a number of reasons, such as background, location, and economic times." 2009 WL 2926844, at *4. Therefore, any information that could be gleaned from such figures would be meaningless. Consequently, the undersigned finds this request is not reasonably calculated to lead to admissible evidence. Defendant's objections are sustained.

Request for production No. 21 seeks copies of all third-party reports, including any draft reports, from 2003 through 2007, that were prepared in relation to Plaintiff (Doc. #78 at 28).[6]  The undersigned finds Plaintiff is entitled to this information.  To the extent Defendant has not already produced such information, it shall be required to do so.

Interrogatory request No. 13 seeks statistical data with respect to the number of times various third-parties have been hired by Defendant to conduct an examination, review, or study regarding its insureds (Doc. #78 at 24).  This request also seeks, *inter alia*, "the percentage of total professional time in each of 2003 through and including 2007 that each such third-party medical or vocational professional spent performing examinations, reviews or studies as opposed to treating patients" (Doc. #78 at 24).  As noted above, such figures would be based on such a broad variety of factors as to render any conclusion(s) drawn therefrom to be meaningless.  Defendant's objections are sustained.

Interrogatory No. 16 seeks the identity of any third-party hired by someone other than Defendant to provide an examination, review, or study of Plaintiff's claim (Doc. #78). The request also seeks the criteria used to select such an individual or entity and the compensation paid to such third-party (Doc. #78 at 25).  To the extent Defendant is in possession of this information, it shall provide the identity of such third-parties, if any, and the criteria used in their selection.  For the same reasons noted above, however, Defendant's objection with respect to the amount of compensation paid to such third-parties is sustained.

---

[6] Although Defendant maintains this request seeks information as to "all claimants," the undersigned reads the request as pertaining only to Plaintiff (Doc. #87 at 7).

Interrogatory No. 17 seeks similar information as in Interrogatory No. 16, *supra*, as to any surveillance arranged by an entity other than Defendant (Doc. #25). With the exception of the total amount(s) paid to such third-party, if any, Defendant shall respond to this request.

### 5. Defendant's Organizational Structure

Request for production No. 5 seeks "[a]ll documents evidencing the organizational structure associated with the disability claims and appeals unit(s)/department(s) as maintained by Defendant from 2005 through 2007" (Doc. #78 at 29).

With respect to Defendant's organizational structure, courts have typically found that such information is relevant. For instance, in *Myers v. Texas Health Resources*, No. 3-09-CV-1402-D, 2010 WL 3719229 at *1 (N.D. Tex. Sept. 22, 2010), the court noted that discovery pertaining to the compensation of decisionmakers and supervisors (*i.e.*, whether such individuals were compensated or rewarded for cutting off benefits or denying claims) is relevant. The *Myers* court, however, found that under the undisputed evidence before it, the sole decisionmaker was not compensated or rewarded for cutting off benefits or denying claims. *Id.* at *1. Therefore, discovery related to said individual's compensation was not relevant under the facts presented in *Myers*. *See id.* The *Myers* court additionally found discovery related to the defendant's "overall financial condition" was not relevant. *Id.* at *2.

Thus, responses with respect to Defendant's organizational structure shall be limited to documents pertaining to the compensation of decisionmakers and supervisors within the disability insurance department(s) (which shall include the claims, appeals, and special

investigation units), and whether such individuals are compensated or rewarded for terminating benefits or denying claims.

Request for production No. 15 seeks information that the undersigned finds will be provided pursuant to the Court's determination as to request for production No. 16, *supra*. To the extent this request seeks information not provided for by the Court's ruling on request No. 16, Defendant's objections are sustained.

Interrogatory No. 2 seeks the identity of each person or entity associated with Plaintiff's claim (Doc. #78 at 30). To the extent this information is not contained within the administrative record, the undersigned finds the request (as specified by Plaintiff) is overly broad. Therefore, Defendant's objection is sustained.[7]

### 6. Costs, Calculations, and Reserves

Request for production Nos. 9 and 10, and interrogatory No. 18 seek information related to Defendant's profitability, costs, calculations, and reserves (Doc. #78 at 32).

Regarding profitability, costs, and reserves, the *Myers* court, *supra*, found that the defendant's "overall financial condition" was not relevant. 2010 WL 3719229 at *1. Plaintiff, however, cites several cases which indicate that information with respect to the amount of reserves is relevant. *See, e.g., Santos v. Quebecor World Long Term Disability Plan*, 254 F.R.D. 643, 650 (E.D. Cal. 2009). In addition, Plaintiff maintains there is a document in the Administrative Record entitled "Case Information Form," which sets forth the amount of reserves with respect to Plaintiff's claim ($432,819) (Doc. #62-1 at 10). Plaintiff further maintains that Defendant calculated Plaintiff's reserves just prior to the date

---

[7] The undersigned would note that much of what Plaintiff seeks by way of this interrogatory will likely be provided pursuant to the other mandates of this Order.

it initiated an investigation into her claim, which subsequently resulted in the termination of her benefits (Doc. #78 at 32; Doc. #62-1 at 10).  Accordingly, discovery into the issue of reserves appears to be relevant and will be allowed.  Otherwise, Defendant's objections are sustained.

### 7. Computer Program Information

Interrogatories Nos. 19 and 20 request Defendant to describe what information is available to employees of Defendant with respect to "reserves, benefit computations, and expected duration [of a claim]" (Doc. #78 at 33).  Defendant objects that such information is irrelevant and appears to be a "pure fishing expedition" (Doc. #78 at 17).  As noted above, the undersigned has found that discovery into the issue of reserves appears to be relevant.  Therefore, Defendant shall provide a response to these requests.

### 8. Social Security Administration Information

By way of request for production No. 23, Plaintiff seeks information related to Defendant's policies and procedures regarding compelling claimants to seek Social Security benefits, and how any approval for such benefits is considered by Defendant (Doc. #78 at 34).  Defendant objects that such information is irrelevant (Doc. #87 at 17-18).  In support, Defendant cites an unpublished opinion by the Eleventh Circuit, *Menard v. Hartford Life & Accident Ins. Co.*, 260 Fed. Appx. 205 (11th Cir. 2007).  This case stands for the proposition that "under the heightened arbitrary and capricious review, evidence outside the administrative record cannot be used to reverse an ERISA plan administrator's denial of benefits."  *Id.*

14

*Menard*, however, was decided prior to *Glenn*, *supra*. Courts are now required consider a plan administrator's conflict of interest as a factor when determining whether an administrator's decision was arbitrary and capricious. *Doyle v. Liberty Life Assur. Co. of Boston*, 542 F.3d 1352, 1359-60 (11th Cir. 2008) (*citing Glenn*, 554 U.S. at 105). Since Plaintiff was apparently granted Social Security disability benefits subsequent to Defendant's decision to terminate her benefits, Defendant maintains any information regarding how it considers Social Security awards to be irrelevant (Doc. #87 at 17-18). Plaintiff maintains, however, that when she advised Defendant that she had been awarded Social Security disability benefits, Defendant "refused" to reconsider its termination of her benefits (Doc. #78 at 34 n. 24). Pursuant to *Glenn*, the undersigned finds this request could lead to admissible evidence. Accordingly, Defendant's objections are overruled.

**B.     Defendant's Motion for Protective Order (Doc. #57)**

In Defendant's motion (Doc. #57), it argues that several areas of inquiry with respect to Plaintiff's proposed deposition topics "exceed the limited parameters of appropriate discovery in an ERISA case" (Doc. #57 at 1).

Upon consideration, the motion (Doc. #57) will be granted to the extent consistent with this Order. Regarding topics Defendant maintains are overly broad in time, the relevant time period shall be from January 1, 2005 through January 1, 2008.

**C.     Defendant's Motion for Protective Order From Excessive Discovery (Doc. #63)**

In the motion (Doc. #63), Defendant requests that it be protected from Plaintiff's alleged excessive discovery requests.

As an initial matter, a threshold issue relates to the scope of many of the Rule 45 subpoenas that were issued by Plaintiff through courts of other jurisdictions. Pursuant to

Rule 45, any motion to modify a subpoena must be filed with the issuing court. Most of the subpoenas here relate to third-parties that are not subject to this Court's jurisdiction (*see e.g.*, Exhibits to Doc. #63). In addition, some of the third-parties have filed motions to quash their respective subpoenas in the appropriate forum(s) (*see* Doc. #63-6 at 3-7; Doc. #83, Minutes). Accordingly, the Court will not address the issues related to such subpoenas, and the parties should keep the Court informed as to any rulings made by other courts related to such subpoenas.

With respect to the subpoenas issued to Defendant's employees, the motion (Doc. #63) will be granted to the extent consistent with this Order.

### III.  CONCLUSION

Based on the foregoing, it is hereby **ORDERED**:

1. Plaintiff's motion to compel outstanding discovery (Doc. #78) is **GRANTED to the extent provided herein**.

2. Defendant's motion for protective order with respect to deposition topics (Doc. #57) is **GRANTED to the extent provided herein.**

3. Defendant's motion for protective order regarding alleged overly burdensome, or excessive, discovery requests (Doc. #63) is **GRANTED to the extent provided herein.**

4. Plaintiff's motion for a hearing and a shortened response period with respect to the motion to compel outstanding discovery (Doc. #79) is **DENIED**.

**DONE AND ORDERED** at Jacksonville, Florida this 27th day of June, 2011.

Copies to all counsel of record

*Thomas E. Morris*
**THOMAS E. MORRIS**
United States Magistrate Judge