**UNITED STATES DISTRICT COURT**
**MIDDLE DISTRICT OF FLORIDA**
**JACKSONVILLE DIVISION**

KIMBERLY HOWARD

     Plaintiff,

vs.                         CASE NO. 3:10–CV-192-J-34TEM

HARTFORD LIFE AND ACCIDENT
INSURANCE COMPANY

     Defendant.

_____/

**ORDER**

**THIS CAUSE** is before the Court on Defendant's Partial Objections to Magistrate

Judge Morris' Omnibus Discovery Order Dated June 27, 2011, with Memorandum of Law

in Support Thereof (Doc. No. 116; Objections), filed on July 12, 2011.  Plaintiff filed

Plaintiff's Response in Opposition to Defendant's Partial Objections to Judge Morris' June

27, 2011 Discovery Order (Doc. No. 122; Response) on July 20, 2011.[1]

**I.    Procedural History**

On March 3, 2010, Plaintiff, Kimberly Howard ("Howard" or "Plaintiff") filed a

Complaint (Doc. No. 1) alleging that Defendant, Hartford Life and Accident Insurance

Company ("Hartford" or "Defendant") violated the Employee Retirement Income Security Act

("ERISA"), 29 U.S.C. § 1001 et seq., by improperly denying her request for disability benefits

pursuant to her employer's disability benefit plan ("the Plan").  See generally Complaint.

---

[1]     Plaintiff's Response was a corrected version of the same response filed earlier on the same day.  See Plaintiff's Response in Opposition to Defendant's Partial Objections to Judge Morris' June 27, 2011 Discovery Order (Doc. No. 121).

Howard alleges that, after initially granting her claim for long-term disability benefits in November of 2005, "Hartford demanded that [she] apply for Social Security Disability [("SSD")] benefits and compelled [Plaintiff] to assert to the federal government that [she] was unable to maintain gainful employment in any occupation." Complaint at ¶¶ 17, 20. A year later, in November of 2006, Hartford terminated Howard's long-term disability benefits. Id. at ¶ 23. Howard appealed, but Hartford upheld its denial in June of 2007. Id. at ¶ 24. After Hartford's final denial, the Social Security Administration (SSA) approved Howard's claim for SSD benefits. Response at 15.[2] In this action, Howard alleges that Hartford improperly denied her benefits and further that as a for-profit corporation, which is responsible both for paying claims and making the final determination to pay or deny claims, Hartford "operates under an inherent conflict of interest in denying claims."[3] Complaint at ¶ 7.

In the Objections, Hartford seeks review of the Order entered on June 27, 2011, by the Honorable Thomas E. Morris, United States Magistrate Judge, in which Judge Morris resolved several discovery motions. Specifically, the magistrate judge ruled on the following

---

[2]   While Howard alleges in her Complaint that she complied with Hartford's requirement to apply for SSD benefits, and that the SSA ultimately approved her claim, Howard did not specify when the SSA approved her claim. See Complaint ¶¶ 20-22. Howard only alleges that after the SSA determined that she was unable to work, Hartford asserted that her SSD benefits "are an offset to her disability benefits under the Plan and thus, [Plaintiff's] benefits under the Plan were deemed to be 'overpaid' by Hartford by the amount of back [SSD] benefits she received in lump sum." Id. at ¶ 22. Howard alleges that Hartford then "demanded the immediate receipt" of her SSD benefits. In Howard's Response, however, she makes clear that her claim for SSD benefits was approved subsequent to her final appeal of Hartford's decision to terminate benefits. See Response at 15. Additionally, the magistrate judge also noted that the SSA approved Howard's claim for benefits after Hartford rendered its final decision but she maintains "that when she advised Defendant that she had been awarded Social Security [D]isability benefits, Defendant 'refused' to reconsider its termination of her benefits." Order (Doc. No. 108; Order) at 15.

[3]   Hartford "admits that it pays claims under the" Plan and "makes the final determination as to claims made for benefits under the" Plan, as well as that "it is a for-profit corporation." Answer (Doc. No. 59; Defendant's Answer) at ¶ 7.

matters: (1) Defendant's Motion for Protective Order Regarding Rule 30([b])(6) Deposition Topics, with Memorandum of Law in Support Thereof (Doc. No. 57) and Plaintiff's Response in Opposition to Defendant's Motion for Protective Order regarding Rule 30([b])(6) Topics (Doc. No. 62-1); (2) Defendant's Motion for Protective Order Providing Relief From Excessive Discovery in ERISA Action, with Memorandum of Law In Support Thereof (Doc. No. 63) and Plaintiff's Response in Opposition to Defendant's Motion for Protective [Order] Providing Relief From Excessive Discovery in ERISA Action (Doc. No. 80); and (3) Plaintiff's Motion to Compel (Doc. No. 78; Motion to Compel) and Defendant's Memorandum of Law in Opposition to Plaintiff's Motion to Compel Discovery (Doc. No. 87; Opposition to Motion to Compel).  The magistrate judge held a hearing on the motions for protective orders on May 20, 2011.  <u>See</u> Clerk's Minutes (Doc. No. 83).[4]  After consideration of the arguments presented by each side on all three motions, the magistrate judge issued an Order granting in part and denying in part both of Hartford's motions for protective orders and granting in part and denying in part Plaintiff's Motion to Compel.  <u>See</u> Order.

On July 12, 2011, Hartford filed its Objections to portions of the Order relating to Plaintiff's Motion to Compel.  <u>See</u> Objections at 2.  Specifically, Hartford makes the following four objections: (1) the magistrate judge erroneously ordered discovery concerning SSD benefits; (2) the magistrate judge's Order to produce documents "pertaining to compensation" of employees and supervisors is inappropriate; (3) the magistrate judge's

---

[4]    The magistrate judge did not notice the hearing on the Motion to Compel because Hartford had not yet had a chance to respond by the May 20 hearing, <u>see</u> Transcript of May 20, 2011 hearing (Doc. No. 137; Transcript) at 2-4, and ultimately declined to hold a separate hearing on that motion because the magistrate judge found that a hearing would not assist him in resolving the Motion to Compel.  <u>See</u> Order at 1 n.1.

order to produce all "internal rules, manuals, guidelines, procedures and protocols. . . " is both overly broad and ambiguous; and (4) the magistrate judge "[e]rroneously ordered discovery in accordance with ambiguous terms." <u>See</u> Objections.

## II.    Standard of Review

 Hartford objects to the magistrate judge's Order pursuant to Rule 72(a), Federal Rules of Civil Procedure (Rule(s)).  <u>See</u> Objections at 1.  To prevail in its Objections, Hartford must establish that the conclusions to which it objects in the Order are clearly erroneous or contrary to law.  <u>See</u> Rule 72(a); 28 U.S.C. § 636(b)(1)(A); <u>see also</u> <u>Merritt v. Int'l Bhd. of Boilermakers</u>, 649 F.2d 1013, 1016-17 (5th Cir. Unit A June 1981);[5] <u>Nat'l Ass'n for the Advancement of Colored People v. Fla. Dep't of Corrs.</u>, 122 F. Supp. 2d 1335, 1337 (M.D. Fla. 2000); <u>Williams v. Wright</u>, No. 3:09-cv-055, 2009 WL 4891825, at *1 (S.D. Ga. Dec.16, 2009) ("A district court reviewing a magistrate judge's decision on a nondispositive issue 'must consider . . . objections and modify or set aside any part of the order that is clearly erroneous or is contrary to law.'") (quoting Rule 72(a)).  "Clear error is a highly deferential standard of review."  <u>Holton v. City of Thomasville Sch. Dist.</u>, 425 F.3d 1325, 1350 (11th Cir. 2005) (citation omitted).  "[A] finding is 'clearly erroneous' when although there is evidence to support it, the reviewing court on the entire evidence is left with the definite and firm conviction that a mistake has been committed."  <u>Id.</u> (citations and quotations omitted); <u>see also</u> <u>Weeks v. Samsung Heavy Indus. Co., Ltd.</u>, 126 F.3d 926, 943

---

[5]     In <u>Bonner v. City of Prichard</u>, 661 F.2d 1206, 1209 (11th Cir. 1981) (en banc) the Eleventh Circuit adopted as binding precedent all the decisions of the former Fifth Circuit handed down prior to the close of business on September 30, 1981.

(7th Cir. 1997) ("The clear error standard [under Rule 72(a) and 28 U.S.C. § 636(b)(1)(A)] means that the district court can overturn the magistrate judge's ruling only if the district court is left with the definite and firm conviction that a mistake has been made."). A magistrate judge's order "is contrary to law 'when it fails to apply or misapplies relevant statutes, case law, or rules of procedure.'" <u>Botta v. Barnhart</u>, 475 F. Supp. 2d 174, 185 (E.D.N.Y. 2007) (quoting <u>Catskill Dev., L.L.C. v. Park Place Entm't Corp.</u>, 206 F.R.D. 78, 86 (S.D.N.Y. 2002); <u>see also</u> <u>Pigott v. Sanibel Dev., LLC</u>, Civil Action No. 07-0083-WS-C, 2008 WL 2937804, at *5 (S.D. Ala. July 23, 2008) (similar) (citation omitted); <u>Schaaf v. SmithKline Beecham Corp.</u>, Civil Action No. 1:04-cv-2346-GET, 2008 WL 489010, at *3 (N.D. Ga. Feb. 20, 2008) (similar) (citation omitted).[6]  Moreover, a magistrate judge is afforded broad discretion in issuing nondispositive pretrial orders related to discovery.  <u>See</u> <u>Tracy P. v. Sarasota Cnty.</u>, No. 8:05-CV-927-T-26EAJ, 2007 WL 1364381, at *2 (M.D. Fla. May 9, 2007); <u>see also</u> Local Rule 6.01(c)(18), United States District Court, Middle District of Florida

---

[6]    The Court notes some authority that the contrary to law standard invites plenary review of a magistrate judge's legal conclusions.  <u>See e.g.</u>, <u>Haines v. Liggett Group, Inc.</u>, 975 F.2d 81, 91 (3d Cir. 1992); <u>Milwaukee Carpenter's Dist. Council Health Fund v. Philip Morris, Inc.</u>, 70 F. Supp. 2d 888, 892 (E.D. Wis. 1999); <u>Computer Econ., Inc. v. Gartner Group, Inc.</u>, 50 F. Supp. 2d 980, 983 & n.2 (S.D. Cal. 1999).  In this Circuit, however, the contrary to law standard has been distinguished as more deferential than <u>de novo</u> review.  <u>See</u> <u>Merritt</u>, 649 F.2d at 1016-17 ("[A] magistrate['s nondispositive orders] are reviewable under the 'clearly erroneous and contrary to law' standard; they are not subject to a de novo determination as are a magistrate's proposed findings and recommendations.").  Nonetheless, even to the extent the contrary to law standard may invite some level of plenary review, it is evident that because a magistrate is afforded broad discretion as to discovery matters, reversal as to a magistrate's discovery-related order is appropriate only where that discretion is abused.  <u>See generally</u> <u>Johnson v. Bd. of Regents of the Univ. of Ga.</u>, 263 F.3d 1234, 1269 (11th Cir. 2001) ("[W]e accord district courts broad discretion over the management of pretrial activities, including discovery and scheduling."); <u>Botta</u>, 475 F. Supp. 2d at 185; <u>Doe v. Hartford Life and Accident Ins. Co.</u>, 237 F.R.D. 545, 547-48 (D.N.J. 2006); <u>Doe v. Marsh</u>, 899 F. Supp. 933, 934 (N.D.N.Y. 1995); <u>see also</u> CHARLES ALAN WRIGHT, ARTHUR R. MILLER & RICHARD L. MARCUS, FEDERAL PRACTICE AND PROCEDURE § 3069 (2d ed. 1997) ("Regarding legal issues, the language 'contrary to law' appears to invite plenary review.  But many matters such as discovery scheduling or disputes might better be characterized as suitable for an abuse-of-discretion analysis.").

(authorizing magistrate judges to hold pretrial conferences).

**III.     Information on Hartford's Policies Regarding Social Security Benefits**

Hartford first objects to the magistrate judge's directive that, pursuant to Metropolitan

Life Insurance Co. v. Glenn, 554 U.S. 105 (2008), Hartford must produce any "'information

related to Defendant's policies and procedures regarding compelling claimants to seek

Social Security [disability] benefits, and how any approval for such benefits is considered

by Defendant' in making its own disability determinations." Objections at 4 (citing Order at

14). Hartford contends that this information is irrelevant. See id. at 4-7. In support of this

contention, Hartford argues that this case is distinguishable from Glenn, where the Supreme

Court indicated that there may be a suggestion of bias if a claim administrator encouraged

a claimant to seek SSD benefits, and then later ignored the SSA's finding in making its own

disability determination. Id. at 4. However, unlike the plaintiff in Glenn, Howard did not

receive her award of SSD benefits until February of 2008, more than six months after

Hartford's June 2007 denial of her appeal. Id. at 7. Moreover, the Plan provides for only

one appeal. Id. at 6 (citing Doc. No. 1-1 at 29). Under these facts, Hartford contends that

nothing in Glenn would require a plan administrator to reopen a closed appeal to consider

SSD benefits awarded after a final decision is rendered. Id. at 5 (citing Majeski v. Met. Life

Ins. Co., 590 F.3d 478, 483 (7th Cir. 2009)). Consequently, Hartford asserts that it is not

unreasonable for a plan administrator to refuse to consider additional evidence submitted

by claimants after the administrator has rendered its final decision. Id. (citing Lane v.

Hartford Life and Acc. Ins. Co., 2006 WL 118302 at *4 (M.D. Fla. Jan. 13, 2006)). Hartford

further argues that this lack of a requirement for reconsideration of a final decision "is

6

consistent with longstanding ERISA law, which 'does not allow supplementation of the record'" with information that was not before the plan administrator at the time it denied Plaintiff's claim. Id. (citing Richards v. Hartford Life and Acc. Ins. Co., 356 F. Supp. 2d 1278, 1287 (S.D. Fla. 2004)).

In response, Howard argues that it is relevant to inquire into Hartford's policies and procedures in regards to SSD benefits because Hartford is motivated to have its claimants approved for Social Security benefits. Response at 17. Howard insists that the law in Glenn mandates that this Court take a "combination of factors" method of review, to consider whether: (1) "an administrator has procedures in place;" (2) "those procedures are reasonable;" (3) "those procedures wall off financial concerns from claim procedures;" and (4) "an administrator followed its own procedures." Id. at 16 (citing Glenn, 554 U.S. at 117). Information regarding Hartford's policies regarding SSD benefits, Howard asserts, is relevant for purposes of the Court's "combination of factors" analysis. Id.

Howard further maintains that it was Hartford who made the issue of SSD benefits relevant to this case, when it insisted that she apply for SSD benefits. Id. Additionally, after the SSA awarded Howard benefits, Hartford contacted her with requests for documentation as to the award. Id. Hartford then presented a demand for offset as an affirmative defense in response to Howard's complaint. Id. at 18. Howard contends that these facts provide another basis for discovery on Hartford's policy as to SSD benefits pursuant to Rule 26(b)(1), because she is entitled to discovery relevant to Hartford's defense. Id. (citing Fed. R. Civ. Pro. 26(b)(1)).

The Court finds Howard's contention, that information related to Hartford's policies

and procedures regarding compelling claimants to seek SSD benefits, and how any

approval for such benefits is considered is relevant to her case, to be lacking in merit.

Indeed, Howard's claim ignores the fact that she was not approved for SSD benefits until

after her claim had been completely resolved by Hartford.  Howard cites two cases for the

proposition that "[o]ther courts reviewing ERISA benefit denial cases have found that such

information is a relevant area of inquiry in discovery."  Id.  However, in both of those cases,

the determinations of the SSA were available to the defendants prior to the final denial.  For

example, in Almeida v. Hartford Life Insurance Co., No. 09-cv-01556-ZLW-KLM, 2010 WL

743520, at *2, 5 (D. Colo. Mar. 2, 2010), the plaintiff alleged that, although the defendant

had requested that she apply for social security benefits, it ignored the fact that she was

granted those benefits, just as the defendant did in Glenn:

> Once again, Glenn provides guidance on the issue.  In that case, the
> Plan Administrator encouraged the claimant to apply for social security
> benefits and she was awarded the benefits.  The Administrator ignored the
> agency's finding.  The Court stated that "[t]his course of events was not only
> an important factor in its own right (because it suggested procedural
> unreasonableness), but also would have justified the court giving more weight
> to the conflict (because [the insurer's] seemingly inconsistent positions were
> both financially advantageous)."

Id. at *5 (alterations in original) (internal citations omitted).  Similarly, in Santos v. Quebecor

World LTD Plan, 254 F.R.D. 643, 649 (E.D. Cal. 2009), the plaintiff sought discovery of the

defendant's policies and procedures as well as information regarding "the weight accorded

to the Social Security Administration's determination in [p]laintiff's claim, . . . ."  The court

determined that the plaintiff was entitled to the policies and procedures of the defendant

related to SSA determinations,  both in general and in her claim, but not information

regarding the weight accorded to the SSA's determination because that information related "to the underlying rationale [of the denial] and not a conflict of interest."  Here, of course, there was no SSA determination for Hartford to weigh at the time it determined that Howard was not entitled to long-term benefits under the Plan.  Thus, discovery regarding its policies and procedures related to consideration of SSA determinations is irrelevant.

In cases such as this one, "[w]hen conducting a review of an ERISA benefits denial under an arbitrary and capricious standard (sometimes used interchangeably with an abuse of discretion standard), the function of the court is to determine whether there was a reasonable basis for the decision, based upon the facts as known to the administrator at the time the decision was made."  Doyle v. Liberty Life Assurance Co., 542 F.3d 1352, 1360 (11th Cir. 2008) (quoting Glazer v. Reliance Std. Life Ins. Co., 524 F.3d 1241, 1246 (11th Cir. 2008)).  Because Hartford could not have given any weight to an SSA determination that had not yet been made, any information related to its policies and procedures in regards to compelling a claimant to seek SSD benefits and considering any approval for such benefits is not information "reasonably calculated to lead to the discovery of admissible evidence."  See Oppenheimer Fund, Inc., v. Sanders, 437 U.S. 340, 351-352 (1978).  In this case, the SSA did not approve Howard's claim for benefits until over six months after the administrator had rendered its final decision.  As the administrator could not have considered the SSA's approval of Howard's claim when it made its decision, Hartford's policies and procedures pertaining to SSD benefits are not relevant to this action.     Morever, the Court rejects Howard's contention that she is entitled to this information as discovery related to Hartford's affirmative defense.  In its Answer, Hartford asserts that, "to the extent Plaintiff recovers the

9

relief sought herein, [Defendant] is entitled to an offset for 'Other Income Benefits,' as the term is defined in the [Plan]" and for "the overpayment of benefits in the amount of $29,581.70, plus interest, which resulted from Plaintiff's receipt of benefits from the [SSA]." Defendant's Answer ¶¶ 43, 44.  While Rule 26(b)(1) provides that Howard is entitled to discovery relevant to Hartford's defense, such discovery may be limited by court order.  See Fed. R. Civ. Pro. 26(b)(1).  Here, the information Howard seeks is unlikely to lead to any information relevant to a resolution of Hartford's defense.  Indeed, Hartford's "policies and procedures in regards to compelling a claimant to seek [SSD] benefits and how any approval for such benefits is considered by Defendant when making its decision" have no bearing on the amount of offset to which Hartford may be entitled if Howard succeeds in her claim.  Moreover, Hartford's entitlement, if any, to offset benefits would be determined based upon the terms of the Plan, not internal policies.  Thus, the Court finds that Hartford's policies and procedures with regards to SSD benefits are not relevant to Hartford's defense. Consequently, Defendant's objections as to this matter are sustained.

## IV.    Documents Pertaining to Compensation

Next, Hartford argues that the magistrate judge's "Order to produce documents 'pertaining to the compensation' of employees and supervisors is overly broad and provides Plaintiff with discovery Plaintiff did not seek."  Objections at 7.  Hartford contends that the magistrate judge wrongfully ordered production of these documents based upon Plaintiff's Request for Production (RFP) No. 5, which sought "[a]ll documents evidencing the organizational structure associated with the disability claims and appeals unit(s)/department(s) as maintained by Defendant from 2005 through 2007."  Motion to

10

Compel at 29.   Hartford notes that RFP No. 5 made no mention of "compensation." Objections at 7.   As such, Hartford states, the magistrate judge's ruling was clearly erroneous, because the production ordered went beyond Howard's discovery request.   Id. at 8.

Additionally, Hartford contends that the magistrate judge's instruction to produce documents "pertaining to the compensation" of its employees is so overly broad that it does not know how to comply with the Order.   Id.   Hartford explains that the phrase "pertaining to compensation" could potentially encompass the salaries of individual employees, the range of possible salaries for a given position, payrolls, W-2 and W-4 forms, direct-deposit forms or other similar information that has little to do with the instant litigation.   Id.   Finally, although Hartford concedes that whether its claims personnel are compensated or rewarded for terminating benefits or denying claims is potentially relevant evidence, it insists that it has already provided that information through sworn interrogatory (INT) answers.[7]   Id. at 9.

---

[7]         Hartford provided a copy of its answer to Plaintiff's INT No. 11, in which it states:

. . . Defendant responds by stating that in order to ensure there is no potential bias in its claims review process, Defendant compensates its employees based on an annual salary and not on a per claim basis or based on the results of their benefit decisions. Defendant does not provide its employees with any monetary (or any other) benefit, incentive, remuneration, bonus, award, achievement, or other recognition based in whole or in part upon the denial or termination of disability benefits.  Employees have no financial incentives to deny claims.  Each claim is evaluated based upon the particular policy and information before the administrator, with due regard for its fiduciary obligations.

Responding further, each claim is analyzed individually and without consideration of other claims, the cost to Defendant to approve or deny a claim, and the examiner's future employment or role with Defendant.  On appeal, each claim is independently analyzed by an Appeals Specialist in the Appeals Unit who had no role or input in the initial investigation and decision of the claim.

Claims handling is based on information and evidence that Defendant receives during

11

Hartford further contends that it "is producing certain documents pursuant to the [m]agistrate [j]udge's directive to produce bonus programs, profit-sharing programs, etc. (to which [Defendant] is not objecting)." Id. at 8-9.

In response to the Objections, Howard contends that the magistrate judge did not order discovery in excess of what she requested, but that, to the contrary, the magistrate judge significantly limited and modified her discovery requests, in light of Hartford's requests. Response at 2-3.  Howard argues that the magistrate judge was addressing RFP Nos.15 and 16 and INT No. 2 in addition to RFP No. 5, when he ordered Hartford to provide compensation information. Id. at 3-4.  Next, she avers that Hartford ignores the magistrate judge's statements addressing its motions for protective orders, which sought limitations on

the claims process and is no way outcome determinative.

Defendant uses independent, third-party vendors to conduct medical records reviews and independent medical examinations.

Defendant does not provide any financial incentive or monetary (or any other) benefit to its third-party vendors based on denial of claims.

Claims personnel do not have access to or knowledge of financial information regarding a policyholder, nor is information regarding the profitability or other financial information of a policyholder provided or accessible to them.  Indeed, claims personnel are walled off from those interested in firm finances.  The claims personnel are separate from and not involved with those persons responsible for Defendant's financial operations and decisions.  Claims investigations and decisions are made separately from, and without consideration of, the financial affairs of Defendant.

When a claim denial is appealed, the entire claim file, including the appeal investigation and the decision upon which the appeal is based, is assigned to a person who had no involvement in the original claim decision.  The person investigating and deciding the appeal has the sole, independent authority to make the appeal decision.

Exhibit 5 to the Objections.  Howard did not seek any further response to INT No. 11 in her Motion to Compel, and the magistrate judge did not refer to this response in the Order.  Nevertheless, Hartford's Interrogatory Responses were attached to the Motion to Compel as Exhibit 4.  See Defendant, Hartford Life and Accident Insurance Company's, Notice of Service of Unverified Responses to Plaintiff's Initial Interrogatories (Following Court Order Denying Motion to Stay) (Doc. No. 78-4; Defendant's Interrogatory Responses).

discovery of compensation. Id. at 5 (citing Order at 15).  Howard also asserts that during the hearing on this matter, she explained that she sought information regarding Hartford's organizational structure and information regarding compensation to understand if Hartford has a system in place that rewards increased claim denials. Id.

Additionally, Howard argues that Hartford's claim that the magistrate judge's order of discovery "pertaining to" compensation is ambiguous is without merit because the discovery requests clearly define the term "pertaining to."[8] Id. at 7.  Moreover, she takes issue with Hartford's contention that it does not know the employees to whom the request applies.  Id.  Howard notes that the magistrate judge specifically instructed Hartford to produce documents pertaining to the compensation of "decisionmakers and supervisors within the disability insurance department(s)."  Id. (quoting Order at 12-13).  Likewise,

---

[8]      Howard does not cite or otherwise provide the definition she refers to in her Response. However, after reviewing Plaintiff's Requests for Production and Interrogatories, the Court notes that her discovery requests do not include a separate definition of "pertaining to," but both contain the following definitions which include the term:

> "Associated" means: pertaining to, referring to, containing, concerning, responding to, reflecting, indicating, commenting on, mentioning, supporting, corroborating, demonstrating, proving, regarding, discussing, showing, evidencing, embodying, describing, implying, analyzing, constituting, refuting, rebutting, contradicting or controverting, and shall be construed to include any connection, direct or indirect, whatsoever with the requested documentation, person, or subject matter, without limitation unless specifically indicated.  Any or all of the aforementioned can be used interchangeably with the word "associated."
> . . .
> "Relate to," "relating to," or "related to" means: pertaining to, referring to, containing, concerning, responding to, reflecting, indicating, commenting on, mentioning, supporting, corroborating, demonstrating, proving, regarding, discussing, showing, evidencing, embodying, describing, implying, analyzing, constituting, refuting, disputing, rebutting, contradicting or controverting.

Plaintiff's First Request for Production of Documents (Following Court Order Denying Motion to Stay) (Doc. No. 78-1) at 2, 6; Plaintiff's Initial Interrogatories (Following Court Order Denying Motion to Stay) (Doc. No. 78-2) at 2, 5-6.

Howard argues that Hartford's assertions that other terms in the Order are ambiguous are similarly without merit.  Id.  Howard contends that Hartford simply disagrees with the magistrate judge, which, she argues, does not establish clear error.  Id. at 7-8.  Finally, recognizing that Hartford contends that it responded to the relevant inquiry in its interrogatory answers, Howard notes that she is not required to "take Defendant. . . at its word."  Id. at 8.

Under the heading "Defendant's Organizational Structure," the magistrate judge, pursuant to Plaintiff's RFP No. 5, ordered Hartford to produce documents relating to its organizational structure that pertain to "the compensation of decisionmakers and supervisors within the disability insurance department(s)."  Order at 12.  To determine whether there is clear error, the Court must first consider RFP No. 5.  RFP No. 5 requests: "All documents evidencing the organizational structure associated with the disability claims and appeals unit(s)/department(s) as maintained by Defendant from 2005 through 2007."  Motion to Compel at 29.  A plain reading of RFP No. 5 does not reflect a request for documents pertaining to the compensation of decision-makers and supervisors. Additionally, in the hearing before the magistrate judge, Howard made no mention of "compensation" when describing the types of information she sought regarding Hartford's organizational structure.  See Transcript at 38, ln. 13-23.[9]  Moreover, no reading of the

_____

[9]     Howard's counsel stated:

As for the organizational structure, it's really just sort of housekeeping.  Essentially we need to know how it works.  In order to put this all together, we need to know how it works.  Are these individuals being supervised?  Is there somebody there that they have to go to to approve claims, to deny claims, to look over them?  Is there somebody there checking it off and seeing are they applying the right standard, because that is what this

14

Order suggests that the magistrate judge considered any other request for production or interrogatory when ordering this particular discovery.  While Howard suggests that the magistrate judge was also referring to RFP No. 15 and INT No. 2 when contemplating whether to order Hartford to produce information pertaining to compensation,[10] see Response at 3, the magistrate judge sustained Hartford's objections as to RFP No. 15 and INT No. 2.  Therefore it appears that the magistrate judge did not consider either when ordering the discovery at issue.  See Order at 12-13.

A separate interrogatory, INT No. 4, requested information pertaining to the compensation of Hartford's employees.  Motion to Compel at 14.  However, the magistrate judge addressed INT No. 4, along with INT No. 5 and RFP 16, in the Order under the heading "Employee Information," and concluded that Hartford should produce information about written bonus programs, profit-sharing programs, stock option programs, or other performance recognition programs.  Order at 9.  Hartford does not object to this particular

_____

fiduciary's obligation is.

Transcript at 38, ln. 13-23.  Upon the magistrate judge's inquiry, counsel affirmed that the discovery requests related to organizational structure were confined to claims administration, stating: "We just want to know who the supervisors are, who monitored them, because Hartford has an obligation to actually have specific safeguards and procedures in place for monitoring, and we want to know if it's there."  Id. at 38-39.  The Court notes, however, that such discussion related to Plaintiff's Rule 30(b)(6) deposition topic 10, which was listed as "Hartford's organizational structure and procedures of the disability insurance department, including the claims, appeals, and special investigations units."  Notice of Taking Deposition (Doc. No. 57-1) at 2.

[10]    Howard contends that the magistrate judge also examined RFP No. 16 under the heading of "Defendant's Organizational Structure.  Response at 4.  However, a reading of the Order shows that the magistrate judge only referenced RFP No. 16 because he found that some of the information sought in RFP No. 15 would be provided pursuant to his ruling on RFP No. 16, and the magistrate judge then sustained Defendant's objections to any discovery under RFP No. 15 not covered under by his ruling on RFP No. 16.  See Order at 13.

directive.  See Objections at 8-9.  Based upon the discovery requests at issue, the

arguments of the parties and the discussion of the magistrate judge, the Court finds the

Order erroneously directed Hartford to produce information not sought by Howard in RFP

No. 5.[11]  Further, the Court finds that it was clear error to interpret Plaintiff's request for

information regarding Hartford's organizational structure as a request for information

pertaining to compensation, and thus, the Order is due to be overruled.  As such, the Court

does not reach Hartford's argument that this portion of the Order is overly broad.

---

[11]    In his Order, the magistrate judge cited Myers v. Texas Health Resources, 2010 WL 3719229 (N.D. Tex. Sept. 22, 2010) as an example of a case where the court found that a defendant's organizational structure was relevant, although the discovery in that case related to employee compensation.  See Order at 12.  While the court in Myers noted that information relating to compensation of decisionmakers and their supervisors may be relevant to the plan administrator's conflict of interest, it did not do so in relation to any discussion of the defendant's "organizational structure." See generally Myers, 2010 WL 37199.  Indeed, Myers made no mention of organizational structure.  Further, as the magistrate judge observed, the court in Myers "found that under the undisputed evidence before it, the sole decisionmaker was not compensated or rewarded for cutting off benefits or denying claims." Order at 12 (citing Myers, 2010 WL 3719229, at *1).  The defendant in Myers had already provided sworn interrogatory answers that the decisionmaker was not compensated based on her determinations, nor did she receive any incentives for denial of claims.  Myers, 2010 WL 3719229 at *1.  Based on the interrogatory answers provided, the court held that discovery as to the decisionmaker's compensation was irrelevant.  Id.  Likewise, in this case, Hartford has already produced a response to INT No. 4 that states:

> Without waiving its objections, Defendant states that in order to ensure there is no potential bias in its claims review process, Defendant compensates its employees based on an annual salary and not on a per claim basis or based on the results of their benefit decisions.  Defendant does not provide its employees with any monetary [or any other] benefit, incentive, remuneration, bonus, award, achievement, or other recognition based in whole or in part upon the denial or termination of disability benefits.  Employees have no financial incentives to deny claims.  Each claim is evaluated based upon the particular policy and information before the administrator, with due regard for its fiduciary obligations.

Defendant's Interrogatory Responses at 9.  Hartford's answer to INT No. 11 contains a similar paragraph and additional information regarding claims review and appeal.  See id. at 12-13.  As in Myers, this information is sufficient discovery relating to the compensation of Defendant's employees.  Myers, 2010 WL 3719229 at *1.  However, the Court notes that Defendant's Interrogatory Responses, as provided to the Court, appear to be unverified, despite Hartford's contention that this information was provided "via sworn interrogatory answers."  Objections at 9.  If it has not already done so, Hartford will be ordered to provide Howard with sworn interrogatory responses.  See Fed. R. Civ. P. 33(b)(3) ("Each interrogatory must, to the extent not objected to, be answered separately and fully in writing under oath.").

Accordingly, Hartford's objections as to this particular issue will be sustained.

**V.      Discovery Relating to Internal Rules, Guidelines, Procedures, and Practices**

Next, Hartford takes issue with the magistrate judge's directive that it produce all "internal rules, manuals, guidelines, procedures, and protocols regarding Defendant's processing, investigation, and/or determination of its disability claims from January 1, 2005 through January 1, 2008." Objections at 9 (quoting Order at 4-5). Hartford's objection to this production is three-fold. Id. at 10. First, Hartford claims that the requests for production that the magistrate judge cited do not seek production of "all" internal rules, etc. Id. Second, it asserts that an interrogatory is not a vehicle for requesting documents. Id. Third, Hartford points out that even the magistrate judge defined Howard's requests as containing "ambiguous language and undefined terms." Id. (citing Order at 4). Hartford also notes that it has already given Howard its LTD Product Manual, which is around 4,000 pages long and contains the vast majority of all policies, procedures, and practices that may relate to long-term disability claims. Id. at 10.

Howard disagrees with Hartford's argument and explains that the magistrate judge did not order production of all internal rules, guidelines, and procedures pursuant to RFP Nos. 25-27 and INT No. 9 alone, but he also considered RFP Nos. 3 and 17, INT No. 12. Response at 9-10. Additionally, Howard maintains that the magistrate judge's Order addressed Hartford's motion seeking a protective order from certain areas of inquiry at the deposition of its 30(b)(6) witness as well as the arguments made at the May 5 hearing. Id. at 10-11. In doing so, she contends that the magistrate judge actually limited the discovery sought, as Hartford had requested him to do. Id. at 11. While Howard concedes that the

17

magistrate judge described her language as "ambiguous," she argues that the magistrate judge provided direction which does not require Hartford to interpret or respond to ambiguous terms. Id. at 11-12.  Finally, Howard argues that even if Hartford has produced the "vast majority" of all of its policies with the production of its LTD Product Manual, the magistrate judge ruled that all internal rules, guidelines, procedures and practices related to long-term disability claims from January 1, 2005, to January 1, 2008, are relevant and should be produced. Id. at 12.

After consideration of the record, the Court finds that the magistrate judge's Order requiring production of "all internal rules, manuals, guidelines, procedures, and protocols regarding Defendant's processing, investigation, and/or determination of its disability claims from January 1, 2005, through January 1, 2008," is not clearly erroneous.  The Supreme Court has construed relevance as "encompass[ing] any matter that bears on, or that reasonably could lead to other matter that could bear on, any issue that is or may be in the case." Oppenheimer Fund, 437 U.S. at 351 (citing Hickman v. Taylor, 329 U.S. 495, 501 (1947)).  In his Order, the magistrate judge determined that this discovery could be relevant, and that such documents could lead to admissible evidence.  Order at 4.  Although this Court may have come to a different conclusion on this issue, it is not left with a "firm conviction that a mistake has been committed." See Morrissette-Brown v. Mobile Infirmary Med. Ctr., 506 F.3d 1317, 1319 (11th Cir. 2007).  Moreover, the Court is not persuaded that the magistrate judge ordered production of "all internal rules" etc. pursuant to discovery requests that did not seek such information. The magistrate judge interpreted and narrowed construed ambiguous requests and, exercising his discretion, ordered discovery accordingly.

18

A plain reading of the requests at issue does not reveal that the magistrate judge wrongly interpreted the language.  Further, although the magistrate judge noted that Howard's requests used ambiguous language, he did not find the requests themselves to be ambiguous, nor is the Order to produce "all internal rules" etc., ambiguous.  Therefore, the Court determines that the order to produce "all internal rules, manuals, guidelines, procedures, and protocols regarding Defendant's processing, investigation, and/or determination of its disability claims from January 1, 2005 through January 1, 2008" is not clearly erroneous, and Hartford's objections as to this matter are overruled.

## VI.     Ambiguous Terminology

Finally, Hartford contends that the magistrate judge erroneously ordered discovery utilizing ambiguous terms. Objections at 12.  Specifically, it objects to the magistrate judge's instruction "to produce documents that 'reflect Defendant's disability claims procedures, if any, that contain administrative processes and safeguards designed to ensure and verify that benefit claim determinations are made in accordance with governing plan documents and that, where appropriate, the plan provisions have been applied consistently with respect to similarly situated claimants.'"  Id. (quoting Order at 6-7).  Although Hartford recognizes that the term "similarly situated" is used in 29 C.F.R. § 2560.503-1(b)(5), it avers that because the term is not defined in the regulation, it is patently ambiguous.  Id.  According to Hartford, the term "similarly situated" could have several different meanings.  Id. Additionally, Hartford believes that the terms "administrative processes" and "safeguards" are also unclear, and therefore asks that the portion of the Order requiring discovery pursuant to these terms be set aside.  Id.

19

Not surprisingly, Howard disagrees with Hartford's argument, contending that it is without merit. See Response at 13.  Citing to 29 C.F.R. 2560.503-1(a) and (b)(5), Howard relies on the regulation which sets forth the minimum requirements for employee benefit plan procedures under ERISA. Id. at 13-14.  Because Hartford is required to comply with these regulations, Howard contends that Hartford's assertion that it does not know what these terms mean is either disingenuous or an admission that Hartford is not in compliance with the regulation by failing to establish appropriate safeguards. Id. at 14.

Upon review, the Court finds that Hartford has not established that the magistrate judge clearly erred in ordering the production of documents reflecting Howard's disability claims procedures that contain the administrative processes and safeguards that 29 C.F.R. § 2560.503-1(b)(5) requires.  The magistrate judge found that these documents could potentially lead to the discovery of admissible evidence because Howard's discovery "requests appear to relate to establishing whether the overall review of the claim was compatible with Defendant's fiduciary duty in interpreting the plan." Order at 6.  Hartford has not established that the magistrate judge's finding is contrary to law.  Although the language may be broad, the magistrate judge's Order is not clearly erroneous or contrary to law.[12] Thus, Hartford's objection to this portion of the magistrate judge's Order is due to be overruled.

_____

[12]    If Hartford truly needs direction to properly comply with the ordered production, the proper course for Hartford is to confer with Howard's counsel to resolve the matter, and if unsuccessful, to seek clarification from the magistrate judge as to what Hartford should produce in response.

**VII.    Conclusion**

In consideration of the foregoing, it is hereby **ORDERED**:

1.    Defendant's Partial Objections to Magistrate Judge Morris' Omnibus Discovery Order Dated June 27, 2011, with Memorandum of Law in Support Thereof (Doc. No. 116) are hereby **SUSTAINED, in part**, and **OVERRULED, in part**, as follows:

a.    The objection to the Order requiring production of "information related to Defendant's policies and procedures regarding compelling claimants to seek Social Security benefits, and how any approval for such benefits is considered by Defendant," is **SUSTAINED**.

b.    The objection to the Order requiring production of "documents pertaining to the compensation of decisionmakers and supervisors within the disability insurance department(s)" is **SUSTAINED**.

c.    The objection to the Order requiring Defendant Hartford to "provide Plaintiff with a copy of all internal rules, manuals, guidelines, procedures, and protocols regarding Defendant's processing, investigation, and/or determination of its disability claims from January 1, 2005 through January 1, 2008" is **OVERRULED**.

d.    The objection to the Order requiring Defendant Hartford "to produce only documents that reflect Defendant's disability claims procedures, if any, that 'contain administrative processes and safeguards designed to ensure and to verify that benefit claim determinations are made in accordance with the governing plan documents and that, where appropriate, the plan provisions have been applied consistently with respect to similarly

situated claims" is **OVERRULED**.

2.      Defendant Hartford shall have up to and including **August 27, 2012** to produce any remaining documents required by this Order.

3.      If it has not already done so, Defendant Hartford shall provide Plaintiff Howard with sworn interrogatory responses on or before **August 27, 2012**.

4.      Plaintiff and Defendant shall confer, agree upon a schedule for the completion of this action, and file a joint notice advising the Court of the parties proposed schedule no later than **August 31, 2012**.

**DONE and ORDERED** in Jacksonville, Florida this 26th day of July, 2012.

MARCIA MORALES HOWARD
United States District Judge

lc16

Copies to:

Counsel of Record